# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF TENNESSEE
# NORTHERN DIVISION

| | | |
|---|---|---|
| **R. Wayne Hatfield,** | ) | |
|     *Plaintiff,* | ) | No. _____ |
| | ) | **(JURY DEMANDED)** |
| v. | ) | |
| | ) | |
| **Covenant Medical Group, Inc.,** | ) | |
|     *Defendant.* | ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, **R. Wayne Hatfield, M.D.** ("Dr. Hatfield"), by and through the undersigned counsel, and for his Complaint against the Defendant, **Covenant Medical Group, Inc.** ("Defendant CMG") does hereby complain and allege as follows.

1. This is an action against Defendant CMG for violations of the Family and Medical Leave Act of 1993 ("FMLA"), codified at 29 U.S.C. § 2601, *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), codified at 42 U.S.C. § 12101, *et seq.*

### I. PARTIES

2. Plaintiff, R. Wayne Hatfield, M.D., is a male resident and citizen of Sullivan County, Tennessee, making his domicile at 4836 Preston Park Drive, Kingsport, Tennessee 37664.

3. Defendant, Covenant Medical Group, Inc., is a Tennessee corporation, with its principal offices at 1400 Centerpointe Boulevard, Suite 100, Building A, Knoxville, Tennessee 37932. Defendant CMG may be served with process through its registered agent, M. Douglas Campbell, Jr., at 100 Fort Sanders West Boulevard, Knoxville, Tennessee 37922.

## II. JURISDICTION & VENUE

4. This Court has jurisdiction to adjudicate Dr. Hatfield's claims under federal law pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 2617(a), and 42 U.S.C. § 12117(a).

5. This Court has supplemental jurisdiction to adjudicate Dr. Hatfield's state law claim pursuant to 28 U.S.C. § 1367(a).

6. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Defendant CMG resides in this judicial district and 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## III. FACTS RELEVANT TO ALL CAUSES OF ACTION

7. Dr. Hatfield is a board-certified urologist and has been practicing medicine for twenty-six (26) years.

8. Dr. Hatfield is a pioneer of the da Vinci surgical system—a laparoscopic robot that combines a surgeon's skill with computer-enhanced technology for minimally invasive surgery.

9. Dr. Hatfield is also an alcoholic.

10. Beginning on January 1, 2016, Defendant CMG employed Dr. Hatfield full-time as a physician at its urology practice known as Urology Specialists in Knoxville, Tennessee.

11. Defendant CMG and Dr. Hatfield entered into an Employment Agreement. A true and correct copy of said Employment Agreement is attached hereto and incorporated herein as Exhibit A.

12. The Employment Agreement established a term of employment commencing January 1, 2016, and continuing until December 31, 2021.

13. In the Employment Agreement, Defendant CMG agreed to pay Dr. Hatfield a base salary, additional compensation for supervising mid-level healthcare providers and generating

2

Relative Value Units that exceed a productivity standard for each calendar year, and additional benefits.

14. Upon information and belief, Defendant CMG employed fifty (50) employees or more within a seventy-five (75) mile radius of Dr. Hatfield's workplace at all times relevant to this Complaint.

15. Dr. Hatfield worked more than 1,250 hours of service for Defendant CMG during the twelve (12) month period immediately preceding his termination.

16. Upon information and belief, Defendant CMG was a person engaged in an industry affecting commerce and had fifteen (15) or more employees for each working day in twenty (20) or more calendar weeks in the current or preceding calendar year.

17. During his employment with Defendant CMG, Dr. Hatfield was instrumental in growing Defendant CMG's surgical program using the da Vinci surgical system to conduct hundreds of procedures.

18. On or about May 17, 2018, Dr. Hatfield arrived to work at the Fort Sanders Medical Center facility in Knoxville, Tennessee.

19. That morning, he was scheduled to perform surgical procedures on a handful of patients.

20. Upon information and belief, Dr. Hatfield had an odor of alcohol about his person that morning, which was noticed by his surgical staff in the operating room.

21. Upon information and belief, Defendant CMG's surgical staff reported that Dr. Hatfield had an odor of alcohol about his person to Defendant CMG.

22. Notwithstanding, Defendant CMG allowed Dr. Hatfield to complete all of his scheduled procedures.

3

23. Dr. Hatfield was escorted to Employee Health later that afternoon.

24. Upon information and belief, Dr. Hatfield was assisted by an employee of Defendant CMG, Ms. Latisha Gee, ANP-BC, who observed that, Dr. Hatfield no longer had an odor of alcohol about his person as had been reported by the surgical staff earlier that day.

25. Upon information and belief, Ms. Gee reported that he had a red face, bloodshot eyes, and his hands shook while completing the consent paperwork required for testing.

26. At that time, Dr. Hatfield cooperated with drug and alcohol testing conducted by Defendant CMG.

27. Dr. Hatfield submitted to breathalyzer testing and an observed urine drug screen, which indicated positive results for alcohol and a prescription drug, respectively.

28. Subsequently, Defendant CMG placed Dr. Hatfield on administrative leave pending further investigation and told him that he could not report back to work until instructed.

29. Immediately, Dr. Hatfield sought supervised rehabilitative treatment through the Bradford Health Services Healthcare Professional Program ("Bradford"), which addresses the special demands and pressures placed on healthcare professionals that cause stress, burnout, depression, and the abuse of alcohol and drugs.

30. Dr. Hatfield notified Defendant CMG of his intention to obtain treatment for drug and alcohol addiction and asked to take medical leave.

31. Defendant CMG provided Dr. Hatfield FMLA paperwork on or about May 24, 2018.

32. Afterward, Dr. Hatfield provided Defendant CMG with appropriate documentation of his leave to seek treatment for his drug and alcohol addiction.

4

33. Defendant CMG approved Dr. Hatfield's request for medical leave and did not terminate his employment.

34. Thereafter, Dr. Hatfield voluntarily entered a twelve (12) week in-patient drug and alcohol treatment program through Bradford and stopped using drugs and alcohol.

35. As a component of his treatment, Dr. Hatfield was not permitted to have contact with anyone outside of his program for thirty (30) days, and accordingly, he was unable to make telephone calls, send e-mail, and receive mail during that period.

36. About a month into his in-patient treatment, Defendant CMG delivered a letter to Dr. Hatfield, which notified him that Defendant CMG was terminating his employment "for cause" effective June 20, 2018. A true and correct copy of the letter from Defendant CMG to Dr. Hatfield dated June 20, 2018, is attached hereto and incorporated herein as Exhibit B.

37. Defendant CMG's letter also informed Dr. Hatfield that he was eligible for rehire in the future.

38. Defendant CMG sent the letter to Dr. Hatfield by facsimile while he was on medical leave approved by Defendant CMG, actively participating in Bradford's twelve (12) week in-patient drug and alcohol treatment program, and not using illegal drugs or alcohol.

39. At the time that Defendant CMG terminated his employment, Dr. Hatfield had been on unpaid administrative leave and had not worked for over a month.

40. On April 11, 2019, Dr. Hatfield filed a Charge of Discrimination against Defendant CMG with the Equal Employment Opportunity Commission (the "EEOC"), alleging discrimination and retaliation against him based upon his disability and because he took FMLA leave to receive treatment for his disability.

5

41. In response, the EEOC issued a Notice of Right to Sue dated January 14, 2020, to Dr. Hatfield. A true and correct copy of the Notice of Right to Sue dated January 14, 2020, is attached hereto and incorporated herein as Exhibit C.

## IV. CAUSES OF ACTION

### COUNT ONE

INTERFERENCE IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

42. Dr. Hatfield hereby reaffirms and realleges the allegations of Paragraphs 1-41 as if fully set forth herein.

43. At all times relevant, Defendant CMG was an employer covered by the FMLA pursuant to 29 U.S.C. § 2601, *et seq*.

44. At all times relevant, Dr. Hatfield was an eligible employee under the FMLA pursuant to 29 U.S.C. § 2601, *et seq*.

45. Dr. Hatfield was entitled to leave under the FMLA pursuant to 29 U.S.C. § 2601, *et seq*.

46. Defendant CMG denied Dr. Hatfield the FMLA benefits to which he was entitled pursuant to 29 U.S.C. § 2601, *et seq*.

47. Defendant CMG engaged in prohibited conduct under the FMLA by interfering with, restraining, or denying Dr. Hatfield's rights under the FMLA pursuant to 29 U.S.C. § 2601, *et seq*.

48. As a direct and proximate result of Defendant CMG's violations of the FMLA, Dr. Hatfield has suffered damages for which Defendant CMG is liable. Dr. Hatfield is entitled to damages equal to the amount of any wages, salary, employment benefits, or other compensation denied or lost by Dr. Hatfield, including interest calculated at the prevailing rate, liquidated

6

1734610v2
Case 3:20-cv-00152-JRG-JEM    Document 1    Filed 04/10/20    Page 6 of 12    PageID #: 6

damages and interest, employment, reinstatement, promotion, reasonable attorneys' fees and costs, and all such other remedies as are necessary and proper.

## COUNT TWO

RETALIATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

49. Dr. Hatfield hereby reaffirms and realleges the allegations of Paragraphs 1-48 as if fully set forth herein.

50. Dr. Hatfield availed himself of his protected rights under the FMLA pursuant to 29 U.S.C. § 2601, *et seq*. by notifying Defendant CMG of his intent to take leave for his serious health condition.

51. About a month into his in-patient treatment program, Dr. Hatfield suffered an adverse employment action when Defendant CMG terminated his employment allegedly "for cause."

52. Defendant CMG's justification for the termination of Dr. Hatfield's employment is pretextual and baseless.

53. Defendant CMG terminated Dr. Hatfield because he exercised FMLA benefits to which he was entitled pursuant to 29 U.S.C. § 2601, *et seq*.

54. Defendant CMG engaged in prohibited conduct under the FMLA by retaliating against Dr. Hatfield in contravention of his rights under the FMLA pursuant to 29 U.S.C. § 2601, *et seq*.

55. As a direct and proximate result of Defendant CMG's violations of the FMLA, Dr. Hatfield has suffered damages for which Defendant CMG is liable. Dr. Hatfield is entitled to damages equal to the amount of any wages, salary, employment benefits, or other compensation denied or lost by Dr. Hatfield, including interest calculated at the prevailing rate, liquidated

7

damages and interest, employment, reinstatement, promotion, reasonable attorneys' fees and costs, and all such other remedies as are necessary and proper.

## COUNT THREE

### DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT

56. Dr. Hatfield hereby reaffirms and realleges the allegations of Paragraphs 1-55 as if fully set forth herein.

57. At all times relevant, Defendant CMG was an entity covered by the ADA pursuant to 42 U.S.C. § 12101, *et seq*.

58. At all times relevant, Dr. Hatfield was a qualified individual with a disability under the ADA pursuant to 42 U.S.C. § 12101, *et seq*.

59. Dr. Hatfield notified Defendant CMG of his intention to obtain in-patient treatment for his drug and alcohol addiction and asked to take medical leave.

60. Defendant CMG approved Dr. Hatfield's request for leave and did not terminate his employment.

61. Thereafter, Dr. Hatfield voluntarily entered a twelve (12) week in-patient drug and alcohol treatment program with Bradford and stopped using drugs and alcohol.

62. However, Defendant CMG was unwilling to provide a reasonable accommodation Dr. Hatfield's disability by allowing him to seek treatment for his drug and alcohol addiction.

63. Dr. Hatfield suffered an adverse employment decision when Defendant CMG terminated his employment allegedly "for cause" while he was participating in an in-patient drug and alcohol treatment program.

64. Defendant CMG's justification for the termination of Dr. Hatfield's employment is pretextual and baseless.

65. Defendant CMG terminated Dr. Hatfield because of his disability in contravention of the ADA pursuant to 29 U.S.C. § 12101, *et seq*.

66. Defendant CMG engaged in prohibited conduct under the ADA by discriminating against Dr. Hatfield on the basis of his disability in contravention of his rights under the ADA pursuant to 29 U.S.C. § 12101, *et seq*.

67. As a direct and proximate result of Defendant CMG's violations of the ADA, Dr. Hatfield has suffered damages for which Defendant CMG is liable. Dr. Hatfield is entitled to employment, reinstatement, promotion, back pay, reasonable attorneys' fees and costs, and all such other remedies as shall be necessary and proper.

## COUNT FOUR

RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT

68. Dr. Hatfield hereby reaffirms and realleges the allegations of Paragraphs 1-67 as if fully set forth herein.

69. At all times relevant, Defendant CMG was an entity covered by the ADA pursuant to 42 U.S.C. § 12101, *et seq*.

70. At all times relevant, Dr. Hatfield was a qualified individual with a disability under the ADA pursuant to 42 U.S.C. § 12101, *et seq*.

71. Dr. Hatfield engaged in protected activity under the ADA pursuant to 42 U.S.C. § 12101, *et seq*. by requesting a reasonable accommodation for his disability.

72. Defendant CMG knew that Dr. Hatfield engaged in protected activity under the ADA pursuant to 42 U.S.C. § 12101, *et seq*. because it initially granted the reasonable accommodation by allowing him to seek treatment for his drug and alcohol addiction.

9

73. Dr. Hatfield suffered an adverse employment decision when Defendant CMG terminated his employment allegedly "for cause" while he was participating in his drug and alcohol treatment program.

74. Defendant CMG's justification for the termination of Dr. Hatfield's employment is pretextual and baseless.

75. Defendant CMG terminated Dr. Hatfield for engaging in activity protected by the ADA pursuant to 29 U.S.C. § 12101, *et seq*.

76. Defendant CMG engaged in prohibited conduct under the ADA by retaliating against Dr. Hatfield in contravention of his rights under the ADA pursuant to 29 U.S.C. § 12101, *et seq*.

77. As a direct and proximate result of Defendant CMG's violations of the ADA, Dr. Hatfield has suffered damages for which Defendant CMG is liable. Dr. Hatfield is entitled to employment, reinstatement, promotion, back pay, reasonable attorneys' fees and costs, and all such other remedies as shall be necessary and proper.

## COUNT FIVE

### BREACH OF CONTRACT

78. Dr. Hatfield hereby reaffirms and realleges the allegations of Paragraphs 1-77 as if fully set forth herein.

79. The Employment Agreement between Defendant CMG and Dr. Hatfield is an enforceable contract.

80. Under the Employment Agreement, Defendant CMG agreed to pay Dr. Hatfield a base salary, additional compensation for supervising mid-level healthcare providers and

10

generating Relative Value Units that exceed a productivity standard for each calendar year, and additional benefits for the entire term of the Employment Agreement.

81. On June 20, 2018, Defendant CMG breached the Employment Agreement by terminating Dr. Hatfield's employment without proper cause prior to the end of the term set forth in the Employment Agreement.

82. As a direct and proximate result of Defendant CMG's breach of the Employment Agreement, Dr. Hatfield has sustained damages in an amount to be proven at trial but no less than $1,400,000.00, plus pre-judgment interest, post-judgment interest, and any other amounts the Court deems appropriate.

**WHEREFORE,** Dr. Hatfield respectfully prays for relief as follows.

1. That this Court order Defendant CMG to rehire Dr. Hatfield at his former position or in an equivalent position with all employment rights and benefits to which he would have otherwise been entitled but for his termination or, alternatively, award Dr. Hatfield front pay and benefits in lieu of his reinstatement;

2. That this Court award Dr. Hatfield his reasonable attorneys' fees and costs as provided by law;

3. That this Court enter judgment for Dr. Hatfield for backpay beginning from the date of his termination in an amount which shall be proven at trial;

4. That this Court enter judgment for Dr. Hatfield for the value of the employment benefits or other compensation that he lost beginning from the date of his termination in an amount which shall be proven at trial;

5. That this Court enter judgment for Dr. Hatfield for liquidated damages as described in 29 U.S.C. § 2617(a)(1)(A)(iii);

6. That this Court enter judgment for Dr. Hatfield for breach of contract in an amount to be proven at trial but no less than $1,400.000.00;

7. That this Court award Dr. Hatfield pre- and post-judgment interest as provided by law;

8. That this Court grant Dr. Hatfield other legal or equitable relief as shall be necessary and proper to eliminate the violations of the FMLA and ADA as identified herein and to effectuate the purposes of such laws;

9. That a jury is hereby demanded to try all issues triable by a jury; and

10. That this Court grant such other, further, and additional relief as it may deem reasonable and just.

**RESPECTFULLY SUBMITTED** this the 10th day of April, 2020.

/s/ *Melissa B. Carrasco*
Melissa B. Carrasco, BPR # 029094
Allison S. Jackson, BPR # 029230
EGERTON, MCAFEE, ARMISTEAD & DAVIS, P.C.
900 S. Gay Street, 14th Floor
Knoxville, TN 37902
Phone: 865-546-0500
Fax: 865-525-5293
Email: mcarrasco@emlaw.com
ajackson@emlaw.com